1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11  JOHN JORDAN, an individual,
                                       NO. CIV. S-05-0611 WBS DAD
12            Plaintiff,

13       v.                             ORDER RE: MOTION FOR ____
                                        SUMMARY JUDGMENT
14

15  DEERE & COMPANY; THE SCOTTS
    COMPANY; THE HOME DEPOT, INC.;
16  and DOES 1 to 11;

17            Defendants.

18                         ----oo0oo----

19            Plaintiff John Jordan filed this products liability

20  suit after allegedly sustaining injury from the operation of a

21  Scotts brand lawnmower manufactured by defendant Deere & Company

22  and purchased from defendant Home Depot, Inc.  Defendants now

23  move for summary judgment.  For the reasons given below, the

24  court denies defendants' motion.

25  I.   Factual and Procedural Background

26            In 2001, plaintiff purchased a Scotts brand Walk-Behind

27  Rotary Lawnmower that was manufactured by defendant Deere &

28

                                  1

Company.  (Martorano Decl. Ex. D (Jordan Dep. 10:18).)[1]
Plaintiff knew at the time of purchase that the lawnmower had a
folding handle.  (<u>Id.</u> at 13:15-17.)  Additionally, the bars that
comprise the lawnmower handle intersect and create a joint, the
edge of which is not round.  (Jordan Decl. ¶ 3; <u>see also</u>
Martorano Decl. Ex. A (Photograph 5).)  Steel control cables
covered in plastic run from the upper handle down to the area of
the engine.  (<u>Id.</u> ¶ 5.)  They also run near the previously-
described joint on the outside of the handle.  (<u>Id.</u> ¶¶ 5-8.)

    The lawnmower came with a manual that plaintiff read in
its entirety before operating the machine.  (<u>Id.</u> at 15:2-10.)
The text of the manual directs the operator to ensure the cables
are inside of the handle while folding or unfolding the handle.
(Martorano Decl. Ex. D (Jordan Dep. 15:2-10).)  The manual
contains subsections entitled "Fold Handles" and "Unfold
Handles."  (Jordan Decl. Ex. 1 (Operator's Manual at 27, 29).)
Below each subsection is a bolded warning labeled "IMPORTANT".

---

[1]    The court notes that defendants filed objections to
plaintiff's evidence with their reply.  Some of the objections
are directed to plaintiff's characterizations of the shape of the
lawnmower handle.  The court has not relied on these
characterizations in its analysis, and therefore need not address
these objections.  Moreover, defendants primarily target
plaintiff's response to defendants' statement of undisputed facts
and not the underlying affidavits on which these statements are
based.  A plaintiff's statement of disputed facts is not
evidence, the admissibility of which can be challenged under the
Federal Rules of Evidence.  <u>See</u> <u>Perma Research & Dev. Co. v.</u>
<u>Singer Co.</u>, 410 F.2d 572, 579 (2d Cir. 1969) (holding that
objections to an affidavit submitted on a motion for summary
judgment "must be precise" and "specify which parts of the . . .
<u>affidavit</u> should be stricken and why" (emphasis added)); 10B
Charles Alan Wright et al., 10B Federal Practice and Procedure §
2738 (3d ed. 1998 & Supp. 2005) ("[A] motion to strike should
specify the objectionable portions of the affidavit and the
grounds for each objection.").

1  (<u>Id.</u> at 27-28.)  The warning in the "Fold" subsection reads:

2  "Avoid Damage! DO NOT CRIMP CABLES when folding handle bars."

3  (<u>Id.</u> at 27.)  The warning in the "Unfold" subsection reads:

4  "Avoid Damage!  Prevent Damage to mower control cables when

5  installing handle assembly.  DO NOT pinch or crimp the control

6  cables.  Control cables must be inside of handle and unrestricted

7  before tightening hardware." (<u>Id.</u> at 29.)  The instructions

8  later elaborate: "CAREFULLY fold lower handle forward.  <u>Guide</u>

9  cables inside lower handle. DO NOT CRIMP CABLES". (<u>Id.</u> at 28

10 (emphasis added).)

11      Plaintiff used his lawnmower once each week from

12 approximately March through October during the years of 2001 and

13 2002.  (Martorano Decl. Ex. D (Jordan Dep. 15:11-19, 18:9-18).)

14 Between each use he folded down the handles and stored the

15 machine in his shed.  (<u>Id.</u> at 17:2-18.)  He followed the same

16 procedure when storing the lawnmower for the winter.  (<u>Id.</u> at

17 15:21-15.)  Prior to the incident that led to this litigation,

18 plaintiff had never hurt himself in any way folding or unfolding

19 the lawnmower handle.  (<u>Id.</u> at 18:21-24.)  According to an

20 employee of defendant Deere & Company, no other injury has been

21 reported to Deere involving the folding or unfolding of the

22 handle of a lawnmower of the same design as the handle at issue

23 in this case.  (Hopkins Decl. ¶ 9.)

24      In February of 2003, Plaintiff decided to mow his lawn.

25 (<u>Id.</u> at 20:4-18.)  As instructed, he guided the control cable out

26 of the way by holding it down with his right hand.  (<u>Id.</u> at

27 21:16-21.)  He used his left hand to pull up the handle.  (<u>Id.</u> at

28 21:16-21.)  The tip of his index finger on the hand he was using

3

to guide the cable became caught in the joint between the upper

and lower portions of the lawnmower handle.  (Id. at 21:22-24,

66:11-13.)  Plaintiff had inadvertently extended his finger into

the zone of the handle with an edge, and he sustained a crush

amputation[2] of a fingertip on his right hand when he unfolded the

handle.  (Jordan Decl. ¶ 15.)

        Plaintiff filed this action for products liability on

January 28, 2005 (Compl. ¶¶ 1, 3.)  Plaintiff's complaint alleges

a single cause of action for products liability, and includes

allegations that the product was defective and adequate warnings

were not provided.  Defendants now move for summary judgment.[3]

---

    [2]    Defendants object to the description of plaintiff's
injury as an amputation or severance, because the medical report
refers to a "crush amputation".  The court's reaction to this
objection is to wonder what difference it makes and why defense
counsel would waste their clients' money by making such a
meaningless objection.  The medical report refers to plaintiff's
injury as "transverse amputation through the distal phalanx at
the mid portion of the nail plate" (Supp. Martorano Decl. Ex. F),
indicating that a portion of plaintiff's finger was amputated
through crushing by the operation of the handle of the lawnmower.
The court, over defendants' objection but based on the plain
language of the medical report submitted by defendants, will
therefore refer to plaintiff's injury as an amputation or an
amputation effected through crushing.

    [3]    Plaintiff appears to attempt to make a cross motion for
summary judgment in his opposition to defendants' motion.  (Opp'n
to Def.'s Mot. for Summ. J. 20 ("Plaintiff joins Defendants'
request and asks the court to summarily adjudicate factual issues
. . . .").)  This language is not sufficient for plaintiff to
have properly noticed a motion for summary judgment.  See E.D.
Local Rule 78-230 ("Except as otherwise provided in
these Rules or as ordered or allowed by the Court, all motions
shall be noticed on the motion calendar of the assigned Judge or
Magistrate Judge.  The moving party shall file with the Clerk a
notice of motion, motion, accompanying briefs, affidavits, if
appropriate, and copies of all documentary evidence . . . .").
Moreover, the court's conclusion that there are disputed issues
of material fact that preclude summary judgment would apply
equally to this motion and to a cross-motion for summary judgment
properly filed by plaintiff.

4

II.  <u>Discussion</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  <u>Id.</u> Any inferences drawn from the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The substantive law governing a case determines the materiality of a fact.  <u>T.W. Elec. Serv., Inc. v. P. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  In a products liability action, there are three categories of defects that may result in strict liability: (1) manufacturing defects,

1  (2) design defects, and (3) inadequate warnings or instructions.

2  Brown v. Superior Court, 44 Cal.3d 1049, 1057 (1988).

3  Plaintiff's claims are based on two of these three categories of

4  defects: design defects and inadequate warnings. (See Pl.'s

5  Opp'n to Mot. for Summ. J. 2, 21.)

6      "[A] product is defective in design either (1) if the

7  product has failed to perform as safely as an ordinary consumer

8  would expect when used in an intended or reasonably foreseeable

9  manner, or (2) if . . . the benefits of the challenged design

10 outweigh the risk of danger inherent in such design." Barker v.

11 Lull Eng'g Co., Inc., 20 Cal. 3d 413, 432 (1978). "The two tests

12 provide alternative means for a plaintiff to prove design defect

13 . . . ." McCabe v. Am. Honda Motor Co., 100 Cal. App. 4th 1111,

14 1121 (2002).

15     These tests "are not mutually exclusive, and a

16 plaintiff may proceed under either or both." Id. at 1126.  Here,

17 plaintiff argues in the alternative that both tests apply.

18 Accordingly, summary judgment must be denied if there is a

19 disputed issue of material fact on either plaintiff's consumer

20 expectation theory or his risk/benefits theory of defective

21 design or his inadequate warning theory of liability.

22     "[T]he consumer expectation test is reserved for cases

23 in which the everyday experience of the product's users permits a

24 conclusion that the product's design violated minimum safety

25 assumptions and is thus defective regardless of expert opinion

26 about the merits of the design." Id. (citing Soule v. Gen.

27 Motors Corp., 8 Cal. 4th 548, 562, 567 (1994)) (emphasis

28 omitted); see also Stephen v. Ford Motor Co., 134 Cal. App. 4th

6

1363, 1371 (2005) ("The consumer expectation test applies only when the defect can be determined by common knowledge regarding minimum safety expectations . . . ."). Based on the reasoning that these products are within the ordinary experience of consumers, the consumer expectations test has been applied to torts involving products such as home pesticides, public transportation, and asbestos insulation. <u>McCabe</u>, 100 Cal. App. 4th at 1121-22 (citing <u>Campbell v. Gen. Motors Corp.</u>, 32 Cal. 3d 112, 126 (1982); <u>Sparks v. Owens-Ill., Inc.</u>, 32 Cal. App. 4th 461, 474-475 (1995); <u>Arnold v. Dow Chem. Co.</u>, 91 Cal. App. 4th 698, 726 (2001)). Likewise, lawnmowers and folding handles[4] are familiar to consumers such that consumers would form expectations about the minimum safety requirements.

Under the consumer expectations test, "[t]he critical question is whether the 'circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers.'" <u>McCabe</u>, 100 Cal. App. 4th at 1122-23 (citing <u>Soule</u>, 8 Cal. 4th at 568-69). As made clear by the parties' arguments, this question is a fact-intensive inquiry, and the facts that are material here are disputed.

Defendants contend that an ordinary consumer would have expected that a finger might be caught, pinched, and even amputated through the crushing operation of a folding handle. Plaintiff contends to the contrary that no ordinary consumer

---

[4]    Folding apparatuses are present on a variety of items besides lawnmowers; to name just a few examples, consumers operate such handles on objects as diverse as ladders, luggage, futons, and ironing boards.

would expect that the minimum safety standard would include the
possibility that his finger might become amputated in the process
of folding or unfolding the lawnmower handle.  As this
disagreement suggests, whether the design met the ordinary
consumer's expectations of basic safety is typically a question
for the jury to resolve.  <u>Campbell</u>, 32 Cal. 3d at 120 ("Unless
very unusual circumstances exist, [a design defect products
liability] claim presents a factual issue which can only be
resolved by the trier of fact.").  Therefore, whether plaintiff's
injury was within ordinary consumer expectations is a disputed
issue of material fact that precludes summary judgment on the
existence of a design defect.  The court therefore need not deal
with the sufficiency of the evidence to withstand summary
judgment on plaintiff's alternative theories of liability.[5]

_____

[5]     Defendants argue that because defendant The Scotts
Company simply was the brand of the lawnmower, but not the
manufacturer, it would not be strictly liable here.  However, any
defendant involved in the chain of production may be held
strictly liable for a defective product.  <u>Bay Summit Cmty. Ass'n
v. Shell Oil Co.</u>, 51 Cal. App. 4th 762, 773 (1996) ("California
courts have further recognized the doctrine extends to
nonmanufacturing parties outside the vertical chain of
distribution of a product, which play an integral role in the
'producing and marketing enterprise' of a defective product and
who profit from placing the product into the stream of
commerce.").
        As plaintiff noted in oral argument, the operator's
manual mentions The Scotts Company several times, including a
prominent position for the company name on the title page of the
manual and an introductory statement reading "Thank You for
Purchasing a Scotts Product".  (<u>See</u> Martorano Decl. Ex. C at 1,
2.)  Additionally, defendant The Scotts Company provided the
brand name for the lawnmower.  (<u>See</u> Defs.' Mot. for Summ. J. 2.)
This evidence raises at least a genuine issue of material fact
regarding whether this defendant was involved in the chain of
production.  Furthermore, defendants have presented no evidence
to the contrary.  Therefore, dismissal of this defendant is
unwarranted at this stage.

      IT IS THEREFORE ORDERED that defendants' motion for summary judgment be, and the same hereby is, DENIED.

DATED:  July 5, 2006

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

9